IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

OLAJUWON SMITH                                                              PLAINTIFF

v.                                            Civil No. 6:19-CV-06003

LEGGITT (Dr., Correct Care Solutions);                       DEFENDANTS
DREAM REDDICK YOUNG (Health Care
Administrator, CCS); CORRECT CARE
SOLUTIONS; ADAM CLARK (Lieutenant,
ADC Ouachita River Unit a/k/a Sgt. Clark)

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983.  Pursuant to

the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable Robert T. Dawson, United

States District Judge, referred this case to the undersigned for the purpose of making a Report and

Recommendation.

Currently before the Court is a Motion to Dismiss by Defendant Correct Care Solutions.

(ECF No. 20).

### I.  BACKGROUND

Plaintiff filed his Complaint in the Eastern District of Arkansas on December 31, 2018.

(ECF No. 2).  It was transferred to this District on January 3, 2019.  (ECF No. 4).  Plaintiff filed

an Amended Complaint on January 22, 2019.  (ECF No. 10).  Plaintiff alleges he was denied

medical care by Correct Care Solutions ("CCS") and CCS employees, Defendants Leggitt and

Reddick Young, on August 9, 2018.  (ECF No. 10 at 4).  In an attachment to his Complaint (ECF

No. 10-1), Plaintiff provided additional details concerning his claims.  Plaintiff's alleges he had

been complaining to CCS about knee problems for two years.  (*Id*. at 1).  He was then attacked by

three other inmates and his knee was "broken" on August 9, 2018.  (*Id*.).  He states his knee would

not have been broken from the attack if CCS had done something about his knee earlier.  (*Id*.).  He

1

was seen by Defendant Leggitt that same day, while he was bleeding "profusely" and his leg was swollen. His leg was x-rayed, and he was then taken to isolation. He was still bleeding and was given no pain medication. (*Id*. at 2). Plaintiff alleges he was kept in the isolation cell with no crutches or other way to move and given only one Naproxen a day for three weeks. (*Id*.). He was not examined further by Defendant Leggitt during the time in isolation. (*Id*.). He was not given crutches or a wheelchair when released from isolation and had to have other inmates carry him to meals. (*Id*.). Plaintiff alleges Defendant Leggitt and CCS told him that it was policy to send victims of extreme violence to isolation and that this "was something they have always done." (ECF No. 10 at 5). Plaintiff alleges that Defendant Leggitt has several grievances filed against him for ignoring and delaying treatment for serious inmate medical needs. Finally, Plaintiff alleges it is a custom of CCS to backdate computer files to show treatment being provided on an earlier date than when it was actually provided. (ECF No. 10 at 5).

Plaintiff was examined by a knee specialist at the National Park Medical Center on September 7, 2018. This specialist told him his knee was "completely out of place" and he needed surgery, but he would need a CT scan first to determine the type and magnitude of surgical procedure needed. (ECF No. 10-1 at 3). Plaintiff alleges the specialist told him that his knee was completely "out of socket" and that, for an injury of this type, treatment should not be delayed any longer than two weeks. (*Id*. at 3-4). He further told Plaintiff that if there was much more of a delay prior to surgery he would have to rebreak the knee to put it back in the correct position. (*Id*.). He received the CT scan and the recommendation for surgery was given to Defendant Reddick Young. (*Id*. at 4).

Plaintiff alleges that 20 days later he was taken to another knee specialist at a different hospital. This specialist took an x-ray of his knee and told him it was now too late to perform

surgery on the injury, and instead put him in a knee mobilizer and applied pressure. The specialist told him that if he had been brought to him sooner, he would have recommended surgery. (*Id*. at 4). Plaintiff alleges that Defendant Reddick Young deliberately ignored the first knee specialist's recommendation and waited a substantial amount of time to send him to a second specialist. (*Id*. at 4-5). Plaintiff alleges that his knee is still extremely swollen, and he is in extreme pain. He asked to go to a third specialist, but this request was denied. (*Id*. at 5). He alleges the CCS staff gave him a script for a wheelchair and crutches, but nothing was given for the swelling and pain. (*Id*.). He claims his knee is dislocated, and something is crushed inside of it. (*Id*. at 2). Every nurse he sees at sick call tells him something needs to be done about his knee and refers him to see a doctor. (*Id*. at 5).

Plaintiff was taken back to the second knee specialist on November 26, 2018. The specialist advised that he continue to use the knee mobilizer and rest his leg in an elevated position. (*Id*. at 7). Plaintiff continues to receive no pain medication other than Naproxen. (*Id*.).

He alleges that Defendant Clark interfered with the treatment ordered by the doctor and denied him access to courts on October 14 or 15 of 2018. (*Id*. at 5). Defendant Clark arrested Plaintiff for contraband on October 14, 2018. He removed Plaintiff from his wheelchair and made him walk from the barracks to the infirmary and then to isolation. (*Id*. at 6). Plaintiff had orders that he was to have a combination of the knee mobilizer and either crutches or a wheelchair for mobility, but Clark denied him all of these. (*Id*.). This caused his entire leg to swell and increased his pain. (*Id*.). Plaintiff was ultimately acquitted of the disciplinary charge for the incident. (*Id*. at 5). Clark also allegedly destroyed Plaintiff's legal work. (*Id*. at 6-7).

At the end of the attachment to his Complaint form, Plaintiff states "this is not part of the lawsuit just showing a custom or pattern of CCS changing dates in the computer and to explain

why the grievance of 9/5/18 contradict itself." He then describes an incident when he was released from administrative segregation and states there was no way the script for his knee mobilizer and crutches could have been written on the date listed in the computer system. (*Id*. at 8).

Plaintiff proceeds against all Defendants in both their official and personal capacity. (*Id*. at 4-5). He seeks compensatory and punitive damages, and an injunction to prevent Defendant Clark from interfering with his or other inmates' legal paperwork in the future. (ECF No. 10 at 7).

Defendant Correct Care Solutions ("CCS") filed its Motion to Dismiss on May 2, 2019. (ECF No. 20). Plaintiff filed his Response on June 4, 2019. (ECF No. 30).

## II.  LEGAL STANDARD

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

## III.  ANALYSIS

Defendant CCS argues the claims against the company should be dismissed with prejudice because Plaintiff clearly sued CCS as the company that employs medical staff for the prison

system, and his claims are therefore based solely on the theory of *respondeat superior*. (ECF No's. 20, 21).

Plaintiff argues his claims against CCS as an entity should remain because Defendants Leggitt and Reddick Young are the onsite representatives of CCS, and CCS delegated final policy-making authority to them. (ECF No. 30 at 1,3). Plaintiff argues the company delegated:

> discretionary decisions that were not constrained by official policies and they were not subject to review. In other words, CCS gave Dream Redic-Young authority to make decisions for the greater good of the company so if those decisions violate a persons' constitutional rights the company could be held liable.

(*Id*. at 1, 3).

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)); s*ee also Kulow v. Nix,* 28 F.3d 855, 859 (8th Cir. 1994) ("if any claim of medical indifference . . . is to succeed, it must be brought against the individual directly responsible for [Plaintiff's] medical care.").

Defendant CCS is correct in stating that Plaintiff has not identified a specific written policy of CCS which has deprived Plaintiff of his rights concerning medical care for his knee. A written

policy, however, is not necessarily required in order to support a claim against CCS.  A custom conflicting with a written policy can support an official capacity claim.  *Johnson v. Douglas County Med. Dept.*, 725 F.3d 825, 829 (8th Cir. 2013).  However, to establish the existence of such a custom, Plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and,
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Id.* at 828.  Under this standard, "multiple incidents involving a single plaintiff could establish a custom if some evidence indicates that the incidents occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials."  *Id.*

Here, Plaintiff alleges Defendant Leggitt and CCS told him that it was policy to send victims of extreme violence to isolation and that this "was something they have always done." When the first orthopedic specialist at the National Park Medical Center criticized the delay in treatment for his knee, noted that time was of the essence, and recommended immediate surgery, he was then taken to a second orthopedic specialist at a different facility after another delay of approximately 20 days.  Over the course of several months, he was then taken only to that second specialist for orthopedic treatment, despite his requests for examination by a third orthopedic specialist.  Plaintiff has also alleged in his Response that both Defendants Leggit and Reddick Young are the onsite representatives of CCS and are permitted wide discretion in making health care decisions at the facility and are, in effect, acting as the final policymakers for CCS onsite.

Plaintiff alleges that Defendant Leggitt has a number of grievances against him from other inmates concerning denial and delay of medical treatment.  Finally, Plaintiff alleges that CCS has a custom of indicating in the computer that care has been provided when in fact it had not been provided on the dates entered.  Giving Plaintiff's allegations the liberal construction required, they permit an inference that Defendants Leggitt and Reddick Young, on behalf of and with the tacit authorization of CCS, engaged in treatment delays and specialist-shopping in order to avoid providing him necessary care for his knee.  As this occurred over a period of several months, Plaintiff has raised a reasonable inference of CCS customs which violated his rights, at least at this early juncture in the case.  For these reasons, it is not appropriate to grant the Motion to Dismiss.

## IV.  CONCLUSION

Accordingly, it is recommended that the Motion to Dismiss by Defendant Correct Care Solutions (ECF No. 20) be **DENIED**.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of December 2019.

/s/ *Mark E. Ford*

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE